# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KEITH KENNARD CARTER, | ) |
| | ) |
| Plaintiff, pro se, | ) **MEMORANDUM OPINION,** |
| | ) **ORDER AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| MAJOR JAMES, CAPTAIN YALE, | ) 1:08CV101 |
| and SERGEANT SHELTON, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on a motion to dismiss filed by Defendants (docket no. 14) and a motion to allow discovery period to commence filed by Plaintiff (docket no. 26).[1] The parties have responded in opposition to the respective motions; therefore, the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of the magistrate judge, the motion to dismiss must be dealt with by way of recommendation. For the reasons stated herein, the court will recommend that Defendants' motion to dismiss be granted. Plaintiff's motion to commence discovery will be denied as moot.

## STATEMENT OF THE CASE

Plaintiff Carter filed this action on February 6, 2008, alleging Defendants violated Plaintiff's civil rights by using excessive force and cruel and unusual

---

[1] Plaintiff has also filed a "Motion for a Ruling on Defendants' Motion to Dismiss." (docket no. 28.) This motion is obviously mooted by the filing of this Recommendation.

punishment under 42 U.S.C. § 1983 (docket no. 2) while he was incarcerated at the Forsyth County Detention Center ("FCDC" or "Detention Center").  Plaintiff names Major Wayne James, Captain Zachary Yale, and Sergeant Randall Shelton as Defendants.  *Id.*  On October 8, 2008, Defendants filed a motion to dismiss contending, *inter alia*, that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e (docket no. 14). Plaintiff filed a Brief in Response to Defendants' Motion to Dismiss on December 5, 2008 (docket no. 21).  After being asked by this court to more specifically address the exhaustion issue, the parties have submitted briefs on this issue (docket nos. 31, 32, 33).

**STATEMENT OF THE FACTS**

For purposes of the motion to dismiss, the allegations in Plaintiff's complaint are taken as true. Plaintiff was incarcerated for some period of time at the Detention Center.  Plaintiff claims that prison policy provided for bedding materials to be taken away from him each morning at 5:00 a.m. and not returned to him until 12:00 a.m. (Compl. p. 3.)  Plaintiff alleges that the lack of proper bedding materials caused back pain.  In August 2006, Plaintiff decided that he would not relinquish his bedding to Detention Center staff and informed Defendant Shelton that he "was going to simply lie face down on the floor with [his] arms wrapped tightly around [his] mattress and would do the same every morning if officers tried to take it from [him]."  (*Id.* at 4.) Defendant Shelton requested the Special Response Team report to Plaintiff's cell

to forcibly remove the mattress. (*Id.*) Plaintiff continued this habit of holding onto the mattress until guards pried it out of his arms until September 4, 2006. (*Id.*)

On the morning of September 5, 2006, Plaintiff once again refused to give up his mattress. Plaintiff alleges he was told by an unnamed lieutenant that he was going to be tased if he did not relinquish his mattress. (Compl. pp. 4-5.) Plaintiff refused to relinquish his mattress, and he was subsequently tased by Defendant Shelton. (*Id.*) Plaintiff further alleges that he was not given bedding from September 5, 2006, until he was transferred to another correctional facility. (*Id.*) Plaintiff also complains that the lights in the cell block were left on twenty-four hours a day. (*Id.*)

In his complaint, Plaintiff seeks monetary damages and injunctive relief. Specifically, he asks for a court order prohibiting prison staff from taking bedding from the inmates, except in certain circumstances, and also an order requiring the FCDC to dim the lights from 10:00 p.m. until 5:00 a.m. (Compl. pp. 6-7.) Plaintiff also seeks to have Sergeant Shelton fired and be "prohibited from ever again working in a setting where inmates are housed." (*Id.* at 7.) Finally, Plaintiff requests damages in the amount of $15,000, to be allocated to four different entities and himself. (*Id.*)

**STANDARD OF REVIEW**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not

to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires plaintiff to allege, at minimum, the necessary facts and grounds to support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has noted, while detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*).

**DISCUSSION**

**Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies that are available to the prisoner.[2] 42 U.S.C.

---

[2] In relevant part, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

§ 1997e(a). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is well-settled by now that Section 1997e's exhaustion requirement is mandatory. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter*, 534 U.S. at 524).

Here, in support of their motion to dismiss, Defendants noted in their brief that Plaintiff admitted in his Complaint that he has not filed an administrative grievance. Compl. ¶ III(A). Defendants also noted that while in the Detention Center, Plaintiff had almost a month before his transfer in which to file a grievance. Defendants contend that the complaint should therefore be dismissed for failure to exhaust administrative remedies.

By order dated June 14, 2010, this court invited the parties to submit briefs further addressing the administrative exhaustion issue. Both parties did so. Defendants expounded on their argument that Plaintiff failed to exhaust his administrative remedies. Defendants dispute Plaintiff's contention in the complaint that he was unable to file a grievance because he was transferred to another prison. Defendants point out that Plaintiff filed eight grievances during the period he was

housed in the FCDC disciplinary segregation unit, indicating that the grievance process was available to him. In fact, Defendants assert that two of the grievances filed by Plaintiff were during the specific time period of the events Plaintiff recounts in his complaint.

In response, Plaintiff states that he made a mistake in the complaint when he said that he had not filed a grievance, and that, in fact, he did file a grievance covering the events at issue, but he simply forgot that he had done so and had mixed up the dates on the grievance. (*See* Plaintiff's Resp., docket no. 32, p. 2) ("The court should note that I did indeed file a grievance in regards to the claims raised in my complaint. I simply forgot that I had done so!").

Notably, Plaintiff has not filed a motion to amend his complaint. In his brief, Plaintiff acknowledges that he is unsure as to what date he was "tased" but he is certain that it only occurred once; therefore, the grievance he filed complaining about the use of a taser on September 9, 2006, referred to the incident in the complaint. In other words, he asserts that he did in fact file a grievance about the taser incident which is the basis of his complaint, he merely put the wrong date of the grievance in the complaint.[3]

---

[3] And, in fact, when he stated that he did not file a grievance because he was unable to do so because of his transfer from FCDC, or, as he later contended, because of unreasonable restrictions imposed by Defendants, according to Plaintiff, he was merely confused and forgetful.

Plaintiff is proceeding *pro se*. This court is required to construe *pro se* pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002). As such, a fair reading of the complaint here, together with the briefs filed by Plaintiff, suggests that Plaintiff did exhaust his administrative remedies by filing a grievance with regard to the incident involving the use of the taser as alleged in the complaint. Thus, the complaint should not be dismissed based on failure to exhaust.

**Motion to Dismiss for Failure to State a Claim**

Plaintiff alleges a claim under the Eighth Amendment of the United States Constitution for damages arising from the use of excessive force. In his complaint, Plaintiff asserts claims against Defendants James and Yale in both their official and individual capacities; the claim against Defendant Shelton is in his individual capacity only.[4]

As Defendants note, Plaintiff's claims against James and Yale in their official capacities are, in reality, claims against the Forsyth County Sheriff's Office. The Sheriff's Office, however, may not be held liable under Section 1983 "unless action

---

[4] As alleged in the complaint, Major James is the Superintendent of FCDC, Captain Yale is Head of Security, and Sergeant Shelton is an officer with the 2nd Shift Special Response Team. (Compl. p. 2.)

pursuant to official municipal policy of some nature caused [the] constitutional tort." *Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (1992). In other words, the doctrine of respondeat superior may not serve as the basis for imposing Section 1983 liability on a governmental entity. *Collins*, 503 U.S. at 121. Rather, for Plaintiff to state a claim against the Sheriff's Office, he must allege either that his rights were impaired as a result of an official policy, practice, or custom promulgated by the governmental entity, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989), or that his rights were impaired by the act or acts of an individual who has final policymaking authority for the challenged act to establish municipal liability, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986). Here, the complaint wholly fails to allege either. Therefore, even accepting Plaintiff's allegations as true, Plaintiff cannot state a claim for excessive force as to the Sheriff's Office.

Likewise, Plaintiff has failed to state a claim against Defendants James and Yale in their individual capacities. First, the complaint contains no allegations of personal fault or involvement by James and Yale regarding the excessive force claim. There is no indication from the complaint that James or Yale were even present during any of the events complained of by Plaintiff. Neither has Plaintiff alleged any basis for supervisory liability against Defendants James and Yale. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (setting forth "firmly entrenched" principles of supervisory liability). Plaintiff does assert, in a conclusory fashion, that James and Yale instructed prison officers to not "ever" provide Plaintiff with a

mattress, sheets or blankets.  (Compl. p. 6.)  This vague allegation, based on hearsay, is simply not enough to impose liability on Defendants James and Yale.

With respect to the individual capacity claim against him, Defendant Shelton contends that he is entitled to qualified immunity. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged.  Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

*Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *receded from by*, *Pearson v. Callahan*, 129 S. Ct. 808 (2009).  A court has discretion to decide which step of the two-pronged test to analyze first.  *Pearson*, 129 S. Ct. at 821.

To succeed on an excessive force claim, a plaintiff must allege and demonstrate that the law enforcement officer "inflicted unnecessary and wanton pain and suffering" upon the detainee.  *Whitley v. Albers*, 475 U.S. 312, 320 (1986). Here, Plaintiff alleges that Defendant Shelton used a taser gun on him on one occasion, in direct response to Plaintiff's refusal to follow orders to turn over his bedding materials.  Plaintiff does not allege that he received any physical injury as

a result of the use of the taser. Indeed, his only allegation of injury is that, because he was deprived of his bedding, he "felt belittled, humiliated and taken advantage of . . . and drifted into a serious state of depression." (Compl. p. 6.)

The Fourth Circuit has specifically addressed the issue of the use of a taser on a pretrial detainee in the context of an excessive force claim. *See Orem v. Rephann*, 523 F.3d 442 (4th Cir. 2008). In *Orem*, the Court analyzed the claim under the Fourteenth Amendment, examining whether the defendant "inflicted unnecessary and wanton pain and suffering." The Court considered the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id.* at 446. The *Orem* Court examined the facts in that case and found that the use of the taser gun was unconstitutional. Nevertheless, the facts in *Orem* differ greatly from those presented here. The plaintiff in *Orem* was a 100-pound woman who at the time the taser was used was already restrained in handcuffs and leg restraints in the caged back seat of a police car, and the defendant police officer repeatedly tased her in sensitive areas of her body, including under her left breast and on her inner thigh. Additionally, there was some personal history between the officer and Orem, and he told her, after he shocked her with the taser gun, that she needed to respect him and the other officers. The taser left a permanent scar on Orem's inner thigh. Presented with these facts, the *Orem* Court found that a jury could conclude that the

defendant's use of the taser was not a good faith effort to restore discipline, but rather an "unnecessary and wanton infliction of pain." *Id.* at 447.

Here, even taking the allegations in the complaint in the light most favorable to Plaintiff, as this court must, Plaintiff has not alleged any facts which show that Defendant Shelton violated Plaintiff's constitutional rights. For several days prior to the incident, Plaintiff refused to follow orders. He was warned that if he did not comply, a taser would be used. A single use of the taser was employed to secure Plaintiff's compliance. The facts alleged by Plaintiff suggest that the use of force was justified, given his behavior. A reasonable officer, under the circumstances, could have believed that using the taser was lawful in light of the clearly established law and information that the defendants had at the time. *See, e.g., Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that single use of a taser gun was not excessive where the plaintiff suffered no serious injury and such force was deemed reasonably proportionate to calm a belligerent arrestee during a traffic stop); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (use of a stun gun to subdue an unruly inmate did not violate Eighth Amendment where plaintiff failed to prove that the officers used the stun gun sadistically or maliciously to cause harm). Accordingly, because Plaintiff has not alleged any facts which show a constitutional

violation, Defendant Shelton is entitled to qualified immunity, and the action against him should be dismissed.[5]

Finally, I note that Plaintiff's claims for injunctive relief are moot because he has been transferred from FCDC to another correctional institution. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff's claims for injunctive and declaratory relief should therefore be dismissed on account of mootness.

**CONCLUSION**

For the foregoing reasons, **IT IS RECOMMENDED** that the court **GRANT** Defendants' motion to dismiss for failure to state a claim (docket no. 14). Plaintiff's motion for a ruling on the motion to dismiss (docket no. 28) is rendered **MOOT** by the filing of this recommendation. Should this recommendation be adopted by the court, Plaintiff's motion to allow discovery period to commence (docket no. 26) will be moot, and it is **DENIED AS MOOT**.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
September 7, 2010

---

[5] To the extent that Plaintiff alleges cruel and unusual punishment by virtue of being deprived of bedding materials and being subject to restraints, and by having lights on in the unit, Plaintiff has not alleged sufficient facts to support such a claim. *See Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Notably, Plaintiff has not alleged, in more than a conclusory fashion, that he sustained any serious or significant physical or emotional injury as a result of the conditions at FCDC.